RECEIVED
SEP 21 2010
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| IN RE: HORNBECK OFFSHORE TRANSPORTATION, LLC, ET AL | : | DOCKET NO. 10-0007 |
| | : | JUDGE TRIMBLE |
| | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is a "Motion to Tax Costs" (R. #69) wherein petitioners, Hornbeck Offshore Transportation, LLC and Hornbeck Offshore Operators, LLC ("Hornbeck") move to tax costs against claimants, S&M Fisheries, Inc. and Acadia Insurance Company, Inc. pursuant to 28 U.S.C. § 1923, Federal Rule of Civil Procedure 54(d) and Local Rule 54.3M&W.

## FACTUAL STATEMENT

On or about January 3, 2009, the M/V GULF SERVICE was in the Atlantic Ocean towing a barge from Searsport, Maine to Brooklyn, New York. Hornbeck Offshore Transportation, LLC owned and Hornbeck Offshore Operators LLC operated the vessel. On or about that same date, the commercial fishing vessel, the F/V PATRIOT, crewed by two seamen, sank approximately 15 nautical miles off the coast of Gloucester, Massachusetts. The two seamen were lost at sea.

Following the loss of the F/V PATRIOT, the United States Coast Guard opened an investigation into the cause of the loss. During that investigation, it was revealed that the M/V GULF SERVICE had crossed the area where the F/V PATRIOT was lost. The Coast Guard inspected the hulls of the M/V GULF SERVICE, the barge, the tow wire, and records; it also

interviewed the crew and examined the vessel's video. Neither the M/V GULF SERVICE nor its crew were designated as parties in interest by the U.S. Coast Guard in its investigation of the sinking of the F/V PATRIOT.[1] In fact, it was determined that the path of the M/V GULF SERVICE was more than 3 nautical miles to the west of the location of the site where the F/V PATRIOT sank.[2]

Hornbeck filed the instant complaint in the Eastern District of Louisiana for exoneration and limitation of liability on March 13, 2009.[3] By order of the court, June 19, 2009 was set as the deadline for filing claims and answers in the proceedings.[4] An extension was granted until June 21, 2009 to file answers and complaint.[5] A second extension was granted until August 20, 2009.[6] On August 19, 2009, S&M Fisheries and Acadia Insurance Company filed a claim and answer in the action.[7]

Pursuant to a motion, the action was transferred to this court on December 29, 2009.[8] On July 6, 2010, pursuant to a voluntary motion to dismiss with prejudice, judgment was granted dismissing

---

[1] Petitioner's exhibit 1, affidavit of Keith Joseph Curole.

[2] Id., ¶ 15.

[3] R. #1.

[4] R. #4.

[5] R. #6.

[6] R. #8.

[7] R. # 12. Respondents, Guiesppina Russo and Graziella Burbridge, surviving heirs of the deceased crewmembers, had previously filed an answer and claim on July 17, 2009 (R. #9 and 10). Those claims were voluntarily dismissed with prejudice on July 23, 2010. (R. #67).

[8] The motion(s) actually sought transfer to either the United States District Court for the District of Massachusetts, or alternatively, the District of Maine. R. #31.

with prejudice all claims made by S&M Fisheries and Acadia Insurance Company.[9] Hornbeck then moved for a judgment of exoneration which was granted on September 16, 2010.[10] In the instant motion, Hornbeck seeks to impose the cost of this suit against S&M Fisheries and Acadia Insurance Company.

## LAW AND ANALYSIS

Hornbeck seeks to tax the costs of this litigation against S&M Fisheries, Inc. and Acadia Insurance Company, Inc. (collectively referred to as "claimants") because it is the prevailing party. Hornbeck argues that claimants had no factual or legal support to file their claims, and, in fact, had clear exculpatory evidence in the form of video prior to making their decision to file their claims. Hornbeck remarks that claimants were dismissed with prejudice by judgment on July 6, 2010.[11] The costs Hornbeck seeks include the (1) $350.00 filing fee, (2) cost of posting the surety bond for the period of March 18, 2009 to March 18, 2010 in the amount of $39,000.00, (3) cost of renewing the surety bond for the period of March 18, 2010 to March 18, 2011, subject to a pro-rate return of unearned premium after date of entry of the exoneration decree, and (4) the Admiralty docket fee pursuant to 28 U.S.C. § 1923 in the amount of $10.

Citing Keystone Shipping Company v. SS MONFIORE[12], Hornbeck submits that the allowance of costs is a matter within the sound discretion of the court and reasonableness is a principal consideration in determining whether to award costs. Hornbeck submits as evidence of the

---

[9] R. #60.

[10] R. # 82.

[11] R. #60.

[12] 275 F.Supp. 606, 607 (S.D.Tx. 1967).

3

reasonableness of the cost of the bond, the affidavit of Darlene A. Bornt, a licensed insurance agent and Vice President for International Sureties, Ltd., an insurance business which specializes in the sale of general litigation and admiralty bonds.[13]

Claimants, on the other hand, argue that (1) Hornbeck consented to the judgment of dismissal with prejudice, (2) Hornbeck was not a prevailing party, (3) the court should within its discretion, disallow all costs, and (4) Hornbeck is not entitled to costs as a matter of law.

Claimants cite Federal Rule of Civil Procedure 41(a) and numerous cases in support of their position that claims for costs are awarded after a voluntary dismissal only after extensive discovery and litigation prior to the dismissal.[14] However, in Schwartz, supra the Fifth Circuit recognized that a dismissal with prejudice is tantamount to a judgment on the merits, and the defendant is clearly the prevailing party and should ordinarily be entitled to costs.[15]

Claimants complain that Hornbeck accepted and/or consented to the dismissal with prejudice without an award of costs, thus it was incumbent upon Hornbeck to request that the court impose costs as "proper terms" as a condition for the dismissal citing Rule 41(a)(2)[16] and Local Rule 54.3.[17]

---

[13] Hornbeck exhibit 5.

[14] See, e.g. Schwartz v. Folloder, 767 F.2d 125, 128 (5th Cir. 1985); Mobile Power Enterprises, Inc. v. Power Vac, Inc., 496 F.2d 1311 (10th Cir. 1974); In re Great Lakes Dredge & Dock Co., 179 F.R.D. 336, 338-339 (S.D. Fla. 1997).

[15] Citing Anthony v. Marion County General Hospital, 617 F.2d 1164, 1169-70 (5th Cir. 1980). ("Although there has not been an adjudication on the merits in the sense of a weighing of facts, there remains the fact that a dismissal with prejudice is deemed an adjudication on the merits for the purposes of *res judicata*. As such, the hospital has clearly prevailed in this litigation).

[16] Federal Rule of Civil Procedure 41(a)(2) provides as follows:
**By Court Order; Effect.** Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. . . . Unless

Claimants further argue that a voluntary dismissal under Rule 41(a)(2) was not the rendering of a judgment in favor of petitioners within the meaning of Local Rul 54.3. Unfortunately, the judgment of dismissal was silent as to the imposition of costs. Claimants have provided no supportive authority for their position that because the judgment of dismissal was silent as to the imposition of costs, Hornbeck is precluded from requesting them. We find no merit to claimant's claim that because the voluntary judgment was submitted and rendered without regard to the imposition of costs, that Hornbeck cannot now make such a claim. However, we do agree that an award of costs under Federal Rule 54(d)(1) is not automatic and is subject to the sound discretion of the trial court.[18]

Hornbeck's reasons for requesting the imposition of costs against claimants is because there was direct conclusive and unequivocal evidence that neither Hornbeck's tug, barge or tow cable came into contact and/or was involved in a collision with the F/V PATRIOT. Claimants complain that the two crewmember affidavits and one consulting opinion relied upon by Hornbeck were broadly worded, self serving assertions, and not conclusive of the ultimate facts. Claimants further complain that these individuals were not available to them at the time of the deadline for filing and therefore not subject to cross-examination. Claimants complain that the probative value and quality of the video and Hornbeck's consultant's opinion was not dispositive of non-liability in the

---

the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

[17] **LR 54.3M&W Memorandum of Costs.** Within 30 days after receiving notice of entry of judgment, unless otherwise ordered by the court, the party in whose favor judgment is rendered and who claims and is allowed costs, shall serve on the attorney for the adverse party and file with the clerk a notice of application to have the costs taxed, together with a memorandum signed by the attorney of record stating that the items are correct and that the costs have been necessarily incurred.

[18] Schwartz, 767 F.2d at 131-132.

premises.[19]

Claimants remark that Hornbeck would have incurred these costs even if claimants had not filed a claim and furthermore, if Hornbeck had conclusive and unequivocal evidence, it was unnecessary to file the instant action. Claimants also note that had they not filed the claim within the requisite time period, they would have forever been barred from doing so. Finally, claimants maintain that bond premiums may not be taxed as costs citing Sincere Navigation Corp.,[20] wherein Judge Alvin Rubin held the following:

> Limitation is a shipowner's privilege, not a right. The costs of this limitation proceeding, including bond premiums, are the price of admission. Not even a limitation petitioner who is exonerated may tax premiums as costs.[21]

Hornbeck argues that even though its expenses for initiating the limitation proceeding may not be recoverable as costs, it is entitled to recover costs it incurred beyond the initiation costs citing, C.J. Dick Towing v. Commercial Petroleum & Transport Co.[22] In C. J. Dick Towing, the court followed the rationale of Martin Marine Transp. Co. V. Jakobson & Peterson, Inc.[23] which disallowed a petitioner's costs of initiating a limitation suit, but would allow the cost of any expenses

---

[19] Claimants are referring to the affidavits of Richard Harden, marine surveyor, and William H. Welte, Esq., co-counsel for Respondents.

[20] 447 F.Supp. 672 (E.D. La. 1978).

[21] Citing American Tobacco v. The Katingo Hadjipatera, 211 F.2d 666 (2nd Cir. 1954).

[22] 202 F.2d 850, 857 (5th Cir. 1953).

[23] 135 F.2d 325 (2d Cir. 1943) ("a petitioner for limitation must bear what expenses he incurs in taking advantage of him [sic] right under the law to petition for limitation or exoneration. That is, the cost of initiating such proceedings are for his own account, though costs which are incident to a contest over his right to limitation are taxable in the usual way.")

"occasioned by the contest" when a claimant "contest[s] the right and loses."[24] Thus, in the alternative, Hornbeck maintains that claimants should at least bear the cost of the second year's cost of the bond premium.[25]

Hornbeck submits that the claimants learned as early as April 21, 2010 that the U.S. Coast Guard had new evidence which caused counsel for claimants to recommend to the claimants that it would be appropriate to discontinue participation in the limitation action brought by Hornbeck.[26] However, even with this evidence exonerating Hornbeck, and without any affirmative evidence to rely on as a basis for filing a claim in this proceeding, claimants waited until July 1, 2010 to file a motion to dismiss their claims. Thus, in the alternative Hornbeck seeks to impose the cost of the second year bond premium of $39,000.00 from March 18, 2010 (the date of the renewal of the bond) until the date of entry of the exoneration decree[27] at a cost of $106.85 per day.[28]

The court agrees that the costs of initiating the limitation proceeding are not taxable to claimants. In order to protect their claim, if any they had, claimants were forced to filed their claim by or before August 20, 2009; claimants filed their answer and claim on August 19, 2009.[29] However, as of April 20, 2010, claimant learned that new evidence from the United States Coast

---

[24] Id. at 329.

[25] Subject to a pro-rata return of unearned premium after date of entry of the exoneration decree.

[26] Claimants' exhibit 1, affidavit of William H. Welte, ¶¶ 8 and 9.

[27] The date of entry of the exoneration decree is 09/16/2010. R. #82.

[28] Hornbeck exhibit 5, affidavit of Darlene A. Bornt, ¶ 15.

[29] R. #19.

7

Guard caused claimants' counsel to recommend discontinuing participation in the limitation action. Furthermore, the court finds that claimants had an affirmative duty to investigate the facts and circumstances of the collision on their own. Claimants filed their answer and claim on August 19, 2009 and yet relied solely on an ongoing U.S. Coast Guard investigation as a basis for filing said claim, the result of which found that neither the M/V GULF SERVICE, nor its crew were designated as parties in interest in its investigation of the sinking of the F/V PATRIOT. Accordingly, the court will impose the cost of the bond premium against claimants from March 18, 2010 until September 16, 2010 at a cost of $106.85 per day; all other costs will be denied.

## CONCLUSION

Based on the foregoing, the motion to impose costs will be granted to the extent that the court has determined to tax costs in favor of Hornbeck and against claimants in the amount of $19,446.70.[30]

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 21st day of September, 2010.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[30] The court has calculated this amount as being 182 days @ $106.85 per day.